# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| ERIC GRAY JR. and TRACEY JACKSON, individually and on behalf of all similarly situated individuals,<br><br>         Plaintiffs,<br><br>-v-<br><br>SCHMIDT BAKING COMPANY, INC.;<br>SCHMIDT BAKING DISTRIBUTION, LLC;<br>EXETER FINANCIAL SERVICES, LLC;<br>DISTRIBUTION CONSULTANTS, INC.; and<br>DISTRIBUTION SERVICES OF AMERICA, INC.<br><br>         Defendants. | Court File No. _____ USDC- GREENBELT '22 FEB 24 PM3:24<br><br>LKG 22CVU463<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>(EQUITABLE RELIEF SOUGHT) |

Plaintiffs, on behalf of themselves and other similarly situated individuals, by and through their undersigned counsel, file this Class and Collective Action Complaint and aver as follows:

## NATURE OF ACTION

1. This is a Class and Collective Action Complaint brought to obtain declaratory, injunctive, and monetary relief resulting from Defendants' misclassification of their Maryland bakery distributor drivers (Distributors) as independent contractors.

2. Defendants Schmidt Baking Company Inc. and Schmidt Baking Distribution, LLC (collectively Schmidt) are in the wholesale bakery business and rely on Distributors to deliver bakery goods to Schmidt customers and stock and stock those products on store shelves. Schmidt's customers are typically supermarkets and retail chains.

3. Plaintiffs are Distributors harmed by Defendants' unlawful misclassification of Distributors as independent contractors and the corresponding denial of the rights, obligations,

privileges, and benefits of employment owed to Distributors under Maryland law. Plaintiffs allege violations of Maryland's Workplace Fraud Laws, Md. Code Ann., Lab. & Emply. § 3-901 *et seq.*, violations of Maryland's Essential Workers' Protection Act, Md. Code Ann., Lab. & Emply. § 3-1701 *et seq.*, violations of Maryland Wage Laws, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.* and 3-501 *et seq.*, usury, violations of Maryland common law; and seek Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Md. Code Ann., Cts. and Jud. Proc., § 3-401, *et seq.* It further challenges the conspiracy between Schmidt, Defendant Exeter Financial Services, LLC (Exeter), and Defendant Distribution Consulting, Inc. (DCI) to violate the aforementioned laws.

4.      This action challenges Schmidt's misclassification of Distributors as independent contractors and its corresponding denial of the rights, obligations, privileges, and benefits owed to Distributors as employees under Maryland law. Relatedly, it challenges the conspiracy between Schmidt, Exeter, and Distribution Services of America, Inc. (DSA) to violate Maryland usury law, Md. Code Ann., Com. Law § 12-101 *et seq.*

5.      Defendants' association constitutes an enterprise engaging in a pattern of racketeering conduct in violation of 18 U.S.C. § 1962(c) with the purpose of depriving Distributors of the rights, obligations, privileges, and benefits owed to Distributors as employees. Such conduct includes mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, devising a scheme to defraud Distributors of money or property having a value of $5,000 or more and causing such money to be transported in interstate commerce, 18 U.S.C. § 2314, and requiring the use of unlicensed money transmitting businesses which affect interstate commerce and are operating in violation of Maryland state law, punishable as a felony. 18 U.S.C. § 1960(b)(1)(A); Md. Code Ann., Fin. Inst. §§ 12-405, 12-430.

6.      Plaintiffs bring their state statutory and common law claims on behalf of a proposed class pursuant to Fed. R. Civ. P. 23 consisting of all persons who worked as Distributors for Schmidt in the state of Maryland at any time in the three years prior to the filing of this Complaint.

7.      Plaintiffs bring their federal claim on behalf of a proposed class pursuant to Fed. R. Civ. P. 23 consisting of all persons who worked as Distributors for Schmidt in the state of Maryland at any time in the four years prior to the filing of this Complaint.

## PARTIES

8.      Plaintiff Eric Gray, Jr. is a resident of Baltimore County, Maryland who works as a Distributor for Schmidt in Maryland. He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Schmidt. Plaintiff Gray operates out of a distribution center run by Schmidt located in Hanover, Maryland.

9.      Plaintiff Tracey Jackson is a resident of Charles County, Maryland who works as a Distributor for Schmidt in Maryland. He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Schmidt. Plaintiff Jackson operates out of a distribution center run by Schmidt located in Clinton, Maryland. Plaintiff Jackson delivers products to stores in Maryland.

10.      Schmidt Baking Company, Inc. is a Maryland corporation with its principal place of business at 601 South Caroline Street, Baltimore, Maryland 21231. The company develops, manufactures, and markets bread and bread-like products to retailers and foodservice outlets for distribution by Schmidt Baking Distribution, LLC. Upon information and belief, Schmidt Baking Distribution, Inc. enters into agreements with its customers relating to the pricing, delivery, and stocking of its products.

11.     Schmidt Baking Distribution, LLC. is a Maryland limited liability company with its principal place of business at 601 South Caroline Street, Baltimore, Maryland 21231. Schmidt Baking Distribution, LLC is a distribution company responsible for delivering products manufactured by Schmidt Baking Co., Inc. to retailers in the Maryland region. Schmidt Baking Company, LLC hires individuals, whom it classifies as independent contractors, to deliver and stock bakery products from its Maryland distribution centers.

12.     Acting in concert, the Schmidt entities hire individuals, which they classify as independent contractors, to distribute its products by delivering them to grocery stores and stocking them on store shelves. Schmidt is and at all relevant times was the employer of Plaintiffs and the FLSA Collective Class and Rule 23 Class under Maryland law.

13.     Defendant Distribution Consultants, Inc. is a New York Corporation operating in Inactive Status with its principal place of business at 2900 Westchester Avenue, Suite 201, Purchase, New York, 10577. DCI provides consulting services for food and beverage manufacturers to "lower distribution costs and increase profits by replacing employee-based models with more efficient, independent, owner-operated distribution systems."[1]

14.     DCI is not registered to do business in the State of Maryland.

15.     Defendant Distribution Services of America, Inc. is a Florida Corporation with its principal place of business at 2900 Westchester Avenue, Suite 201, Purchase, New York, 10577. DSA provides financing, business formation, and accounting services for individuals working as independent distributors.

---

[1] *See* DISTRIBUTION CONSULTANTS, INC., http://www.dci-dsa.com/Home.aspx (last visited Feb. 9, 2022).

16.     DSA is not registered to do business in the State of Maryland and is not licensed as a money transmitting business in the State of Maryland.

17.     Defendant Exeter Financial Services, LLC, an affiliate of Schmidt Baking Distribution, LLC,[2] is a Maryland Limited Liability Corporation with its principal place of business at 650 South Exeter Street, Suite 820, Baltimore, Maryland 21202. Exeter provides financing to Schmidt Distributors. Exeter is not licensed as a money transmitting business in the State of Maryland.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over Plaintiffs' claim under 18 U.S.C. § 1962(c) pursuant to 28 U.S.C. § 1331.

19.     This Court has subject matter jurisdiction over Plaintiffs' state statutory and common law claims pursuant to 28 U.S.C. § 1367(a) as they are so related to the federal claim as to form the same case or controversy under Article III of the United States Constitution.

20.     This Court may exercise general personal jurisdiction over Defendants Schmidt and Exeter because such Defendants conduct substantial business in Maryland, including but not limited to the preparation, sales, marketing, and distribution of baked goods for retail sale and the making of loans to Schmidt employees.

21.     This Court may exercise specific personal jurisdiction over Defendants DCI and DSA, as they regularly do business in Maryland, including but not limited to the provision of consultant services to the Schmidt defendants and business formation services and financing to Maryland residents. Fed. R. Civ. P. 4(k)(1); Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).

---

[2] *See* In re Schmidt Baking Distribution, LLC d/b/a Schmidt, Consent Order, No. 2017-0675, Md. Att'y Gen.: Secs. Div. (Jan. 28, 2019).

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BASIS

23.    Schmidt's business consists of developing, baking, and distributing bakery food products to retail and foodservice customers, using a centralized network of communication, distribution, and warehousing facilities. Distributors are integrated into Schmidt's existing network of operations.

24.    Schmidt ships its bakery products to warehouses five days per week.

25.    Distributors arrive at a warehouse early in the morning and load their vehicles with Schmidt's products.

26.    The Distributors then deliver the product to Schmidt's retailer-customers at times and places specified by Schmidt, or on Schmidt's insistence, at times and places specified by its customers.

27.    The distribution agreement between Schmidt and its Distributors has no specific end date and can be terminated by either party at any time with limited notice.

28.    Distributors and Schmidt agree to defend, indemnify and hold the other harmless against a third party as to any costs, charges or claims which may arise out of such party's direct or indirect failure to perform any obligation and/or discharge any liability arising under this Agreement.

29.    Further, the distribution agreement "irrevocably grants SCHMIDT a limited power of attorney with full and complete authority to transfer DISTRIBUTOR'S Distribution Rights, or perform any of DISTRIBUTOR'S obligations hereunder for DISTRIBUTOR'S account in accordance with the terms of this agreement."

30.    Schmidt markets its bakery and snack products to retailers such as Safeway, Harris Teeter, Food Lion, and other grocery stores and mass merchants. Defendants negotiates with the retailers to set virtually all terms of these relationships including:

    a)    wholesale and retail prices for products;

    b)    service and delivery agreements;

    c)    shelf space to display products;

    d)    product selection;

    e)    promotional pricing for products;

    f)    the right to display promotional materials; and

    g)    virtually every other term of the arrangement.

31.    The relationship between Distributors and Schmidt is essentially the same in material respects.

32.    Schmidt reserves the right to control Plaintiffs and Distributors in the performance of the manner and means of their work.

33.    The work performed by Plaintiffs and Distributors simultaneously benefits or benefited both Schmidt entities. Plaintiffs and Distributors were hired for the purpose of distributing products for Schmidt and/or its affiliates.

34.    Plaintiffs and all other Distributors must strictly follow Schmidt's instructions and adhere to the pricing, policies, and procedures negotiated between Schmidt and its retailer-customers.

35.    Defendants require Distributors to process all transactions through a hand-held computer it provides to them. The hand-held controls the product prices, maintains customer information, tracks mileage, and monitors business performance.

36.     Distributors use Schmidt's hand-held to log deliveries, and Schmidt bills customers using data Distributors enter into that computer. The terms of the sale are negotiated between Schmidt and its retailer-customers.

37.     Distributors place Schmidt's products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Schmidt or one of its retailer-customers is running a sale or promotion, the Distributor also constructs and stocks the promotional display.

38.     Schmidt effectively retains the exclusive right to control the manner and means by which Plaintiffs and all other Distributors perform their jobs.

39.     Schmidt represented to Plaintiffs and other Distributors that they would run their businesses independently, have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

40.     Contrary to those representations, Schmidt denied Plaintiffs and other Distributors benefits of ownership and entrepreneurial skill through conduct that includes, but is not limited to, the following:

     a)     negotiating wholesale prices for the purchase and sale of its products;

     b)     negotiating shelf space for stores in the Distributor's territory;

     c)     negotiating retail sale prices for Distributors' products;

     d)     establishing or negotiating sales and promotions and requiring Distributors to follow them;

     e)     unilaterally adding or modifying Distributors' orders, requiring Distributors to pay for, deliver, and stock product they did not order;

8

    f)     directing Distributors to make deliveries to stores in a specific order and requiring Distributors to get approval for following a different order;

    g)     maintaining the right to discipline and terminate Distributors;

    h)     receiving and addressing complaints against Distributors and taking disciplinary actions against them;

    i)     using Distributors' pay to compensate specified expenses; and

    j)     unilaterally altering standards, guidelines, and operating procedures for the distribution, stocking, and removal of its products from retailers.

41.    Plaintiffs and all other Distributors must accept Schmidt's employment conditions or face termination.

42.    Schmidt controls Plaintiffs' and Distributors' opportunities for profit or loss by controlling wholesale pricing and negotiating retail pricing. Schmidt negotiates sale of its products with major retailers. Plaintiffs and Distributors then deliver the products to store locations per the agreement between Schmidt and its retailer-customers. Plaintiffs and Distributors accordingly lack discretion to decide what products can be distributed to a particular store, whether to run sales or promotions, or how frequently to service stores. As a result, Plaintiffs and Distributors cannot meaningfully control the profitability of their work.

43.    Distributors' investment in equipment to operate their route is relatively low. Apart from the purchase of a truck or trailer, Schmidt makes all other material investments, including bakery trays, warehouse space, computer equipment, administrative support, advertising and marketing materials, and virtually every other business necessity.

44.    Plaintiffs and Distributors typically drive a small box truck five days a week, and routinely use their small personal vehicles to transport Schmidt products and provide additional

services to Schmidt's customer-retailers. Schmidt even arrange for insurance and financing on behalf of Distributors; Distributors pay for the insurance through wage deductions.

45.     The work performed by Plaintiffs and other Distributors for Schmidt does not require specialized skills.

46.     Plaintiffs and Distributors provide services that are an integral part of Schmidt's overall enterprise to prepare, sell, and distribute baked goods.

47.     Despite their pervasive control over the means and manner of Distributors' work, Schmidt uniformly classifies all Distributors as independent contractors.

48.     DCI provides consulting services to Schmidt regarding the implementation of this independent contractor system, assisted in drafting distributor agreements, and referred Schmidt Distributors to its sister company, DSA, to provide financing for the purchase of sales routes or territories.

49.     Because they were misclassified as non-employees, Plaintiffs and Distributors were denied the rights and benefits of employment, including but not limited to payment for all wages and improper wage deductions.

50.     Schmidt requires Plaintiffs and Distributors to bear costs, including but not limited to expenses for equipment, insurance, product loss, and product returns, that would otherwise be borne by Schmidt as the employer.

51.     Schmidt's mischaracterization of the Distributors as independent contractors and the corresponding denial of employment rights and benefits constitute ongoing unlawful practices that may be appropriately enjoined by this Court.

52.     As a condition of working for Schmidt and to obtain financing for the purchase of sales routes or territories, the bakery requires Distributors to form corporate entities for the purpose of abusing the corporate personalities.

53.     As a further condition of working for Schmidt, the bakery requires Distributors to personally and "unconditionally guarantee[] the full and complete performance by DISTRIBUTION CORPORATION of all of the obligations assumed by it … ."

54.     Schmidt refers Distributors to Exeter and DSA for financing the "purchase" of their routes.

55.     Distributors never meet with an employee of Exeter or DSA, rather, the financing documents are presented to Distributors by Schmidt employees.

56.     Schmidt does not disclose their affiliation with Exeter to Distributors.

57.     Schmidt employees sign the financing agreement on behalf of DSA and/or Exeter.

58.     Distributors grant Exeter a security interest in, among other collateral, "any and all assets and rights that the [Distributor] may have or acquire under the Distribution Agreement between SCHMIDT BAKING DISTRIBUTION, LLC and [Distributor] and the Bill of Sale related thereto[.]"

59.     The agreements that Exeter enters with Distributors include an interest rate of 9.5%, a late charge of 5.0% of overdue monthly payments not paid within 15 days of the due date, and, in the event payment is not made within 20 days of the due date, triggering acceleration, 12.0% of any amount of unpaid principal, on the basis of a 360-day year.

60.     Distributors grant DSA a security interest in, among other collateral, "any and all rights that the [Distributor] may have under the Distributor's Agreement between SCHMIDT BAKING DISTRIBUTION, LLC and [Distributor.]"

61.     The agreements that DSA enters with Distributors include an interest rate of 13.0%, a late charge of 5.0% of overdue monthly payments, and, in the event payment is not made within 20 days of the due date, triggering acceleration, 16.0% of any amount of unpaid principal, on the basis of a 360-day year.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this Complaint as a class action pursuant to Rule 23 of the Federal Rules on behalf of a Class defined as follows:

> All persons who are or have performed work as Distributors for Schmidt Baking Company, Inc. or Schmidt Baking Distribution, LLC in the State of Maryland under a Distribution Agreement during the period commencing four years prior to the filing of this Complaint to present.

Plaintiffs reserve the right to redefine the Class prior to class certification.

63.     The Rule 23 Class is so numerous that joinder of individual plaintiffs is not practical. The precise number of Class members is not precisely known but is can reasonably be estimated as 40 or more individuals. Schmidt is likely to have or control information making it feasible to determine how many members are in the Rule 23 Class.

64.     There are several questions of law and fact common to Plaintiffs and the Rule 23 Class, and those questions predominate over any questions that may affect individual Rule 23 Class members. Such questions include but are not limited to the following:

a)      Whether Plaintiffs and Rule 23 Class Members are misclassified as independent contractors and actually were or are employees;

b)      Whether Schmidt violated the rights of Plaintiffs and Rule 23 Class Members under the Maryland Wage Laws, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.* and 3-501 *et seq.* by making illegal deductions from wages,

by depriving them of pay and other benefits of employment, and by requiring them to pay Defendants' business expenses;

c)    Whether Plaintiffs and Rule 23 Class Members are entitled to injunctive relief prohibiting Schmidt from making illegal deductions from the wages of Plaintiffs and members of the Rule 23 Class for the benefit of Schmidt, Exeter, and DSA;

d)    Whether Plaintiffs and Rule 23 Class Members are entitled to declaratory relief declaring that they are Schmidt's employees;

e)    Whether Plaintiffs and Rule 23 Class Members are entitled to injunctive relief directing Schmidt to grant Plaintiffs and Rule 23 Class Members the rights, privileges and benefits of employees;

f)    Whether DCI, Schmidt, and Exeter conspired to deprive the rights of Plaintiffs and Rule 23 Class Members under Maryland Wage Laws;

g)    Whether DCI, DSA, Exeter, and Schmidt conspired to charge Plaintiffs and Rule 23 Class Members interest rates in excess of Maryland usury laws, Md. Code Ann., Com. Law § 12-101 *et seq.*; and

h)    Whether Defendants engaged in a pattern of "racketeering activity" as defined by 18 U.S.C. § 1961(5).

65.    Plaintiffs' claims are typical of those by Rule 23 Class Members. Schmidt maintained common policies, practices, and procedures for Plaintiffs and all Rule 23 Class Members. When Schmidt, conspiring with DCI, DSA and Exeter, misclassified Distributors, that common course of misconduct resulted in substantially similar harms to Plaintiffs and Rule 23

Class Members. Those harms include illegal deductions from wages, nonpayment of wages, improper responsibility for Defendants' business expenses, and usurious interest rates.

66.     Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class. Plaintiffs retained experienced counsel with the necessary expertise and resources to prosecute class action litigation. Plaintiffs and their counsel do not anticipate circumstances where Plaintiff's interests would be adverse to Rule 23 Class Members.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the complexity of the claims in this case, it would not be economical for Class members to individually litigate their claims. If Class Members are required to bring separate lawsuits, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, creating the risk of inconsistent rulings and judgments contrary to the interests of justice and equity. A single proceeding will streamline discovery and avoid needless repetition of evidence at trial.

## CIVIL RICO SUMMARY

68.     At all relevant times herein, the "enterprise" consisted of an association in fact of the Defendants, Schmidt, DCI, Exeter, and DSA, and operated separately and distinct from each of the individual Defendants.

69.     All of the Defendants were entities capable of holding a legal or beneficial interest in property.

70.     Defendants Schmidt enlisted Defendant DCI to assist in transitioning Schmidt employees to independent contractors beginning in 2013. Upon the advice of DCI, Schmidt referred Distributors to Defendants Exeter and DSA to obtain financing to purchase Distribution Rights from Schmidt. Defendants Exeter and DSA then disbursed the loan proceeds to Schmidt

and Schmidt deducted loan payments from Distributors' wages. The enterprise continues with each execution of a Distributor Agreement drafted by DCI and executed by Schmidt and the Distributor, and Schmidt's referral of the Distributor to Exeter and/or DSA to obtain financing for the purchase of the Distribution Rights.

71.     Defendants knowingly participated in the scheme to defraud Plaintiffs and the Class by depriving Plaintiffs and Class Members of the benefits of employment and requiring Plaintiffs and Class Members to obtain usurious loans as a condition of their employment. This scheme has operated over the course of at least a two-year period through the use of mail and wire fraud and unlicensed money transmitting businesses, and the interstate transport of fraudulently obtained money.

72.     Defendants and the enterprise were engaged in, and affected, interstate commerce in that, *inter alia*, a New York corporation, DCI, was contracted by Maryland corporations, Schmidt, to advise and help implement the misclassification scheme, and loans securing purchase of the Distributors' routes were executed in Maryland and funded and serviced by out-of-state lenders, namely DSA.

73.     The consulting services provided to Schmidt by DCI were accomplished either through the mails or by wires, and the fraudulent misclassification scheme was communicated by Schmidt to Distributors through the mails or by wires. Additionally, the U.S. mails and/or wires were utilized in connection with the disbursement of loan proceeds associated with the purchase of Distributors' routes.

74.     Upon information and belief, in or about May 2019, Defendants used the wires and or U.S. mail to submit a loan application, contract of sale, and other documents executed in

Maryland related to the purchase of Mr. Gray's Distribution Rights to DSA, headquartered in New York.

75.     Upon information and belief, in or about July 2019, Defendants used the wires and/or U.S. mail to submit a loan application, contract of sale, and other documents executed in Maryland related to the purchase of Mr. Jackson's Distribution Rights to DSA, headquartered in New York.

76.     Defendants further used the wires to facilitate the operation of and to operate the fraudulent scheme described herein, and to communicate with each during the course of the scheme through telephone calls, facsimiles, e-mail transmissions, and wire transfers of money resulting from and in furtherance of the fraudulent scheme.

77.     Each such use of the U.S. mails and wires by Defendants was in furtherance of the fraudulent scheme described herein and constituted offenses of mail and/or wire fraud as proscribed and prohibited by 18 U.S.C. §§ 1341 and/or 1343.

78.     DSA is not licensed as a money transmitting business in the State of Maryland, and such operation is punishable as a felony under Maryland law. *See* Md. Code Ann., Fin. Inst. § 12-430. In referring Distributors to DSA, Schmidt encouraged the use of an unlicensed money transmitting business in furtherance of the fraudulent misclassification scheme. DSA affects interstate commerce as it "provides business and financial services to independent distributors nationwide,"[3] and, as relevant here, disbursed loan proceeds in interstate commerce from its headquarters in New York to Schmidt in Maryland. *See* 18 U.S.C. § 1960(b)(1)(A).

---

[3] DISTRIBUTION SERVICES OF AMERICA, https://www.dsatax.com/distribution-services-of-america/ (last visited Feb. 22, 2022).

79.     Further, during all relevant times and in furtherance of and for the purpose of executing the fraudulent scheme described herein, Defendants transported, transmitted, and transferred in interstate commerce money of the value of $5,000 or more, knowing the same to have been obtained by means of false or fraudulent pretenses or representations in violation of 18 U.S.C. § 2314.

80.     These uses of the U.S. mails and wires and the interstate transport of money fraudulently obtained to further the scheme were not limited to the transactions with Plaintiffs, but in the transactions with Class Members as well.

81.     Each member of the Class completed a transaction in which the Defendants sold Distribution Rights and issued usurious loans to Distributors, arising from the misclassification of Distributors as independent contractors, resulting in damages to Plaintiffs and the Class.

82.     These acts were related, as they had the similar purpose of depriving Plaintiffs and the Class the benefits owed to Distributors as employees under Maryland law and charging usurious interest rates.

83.     Defendants' enterprise began in at least 2013 and has affected former Schmidt employees who terminated their employment with Schmidt due to the transition to independent contractor status, current and former Distributors who are deprived of the benefits owed to them as current or former employees of Schmidt, and current and former Distributors charged usurious interest rates on loans securing the purchase of their Distribution Rights.

84.     Defendants knowingly participated and engaged in the enterprise and functioned as continuing units identifiable over a period of time and were involved in the transactions of Plaintiffs and the Class Members over a period spanning almost ten years.

85.     Defendants' use of the U.S. mails and wires interstate, the interstate transport of money and property with a value exceeding $5,000 as described herein, and the use of unlicensed money transmitting businesses in violation of Maryland and federal law constitute multiple instances of wire and mail fraud, multiple instances of interstate transport of money converted or fraudulently obtained, continued operation of unlicensed money transmitting businesses, and further constitute a pattern of racketeering activity.

86.     Plaintiffs and Class Members relied to their detriment on the legitimacy and legality of the RICO enterprise.

87.     If Plaintiffs and the Class had then suspected that the enterprise was a racketeering enterprise and was being used to facilitate the fraudulent misclassification scheme at the expense of Plaintiffs and the Class, they would have refused to conduct business with Defendants or their enterprise, would not have entered into transactions with the enterprise or Defendants, and would have sought to secure their rights under the law at that time.

88.     Plaintiffs' and Class Members' injuries to their property were caused by the pattern of racketeering activity conducted through the enterprise in that Plaintiffs and Class Members were deprived of the benefits owed to them as employees of Schmidt and charged usurious interest rates as a result of Defendants' fraudulent scheme, and upon information and belief, the profits obtained through this scheme were directly or indirectly shared among the enterprise's members according to a prior written contract or agreement.

## COUNT I
## DECLARATORY JUDGMENT

(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against
defendants Schmidt Baking Distribution, LLC and Schmidt Baking Co., Inc.)

89.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth
in the preceding Paragraphs.

90.     Under the relevant laws of the United States and Maryland, Defendants have
misclassified Plaintiffs and Class Members as independent contractors rather than employees.

91.     Pursuant to 28 U.S.C. § 2201 and Md. Code Ann., Cts. And Jud. Proc., § 3-401, *et
seq.*, this Court should issue a declaratory judgment establishing that Plaintiffs and Class Members
are Schmidt's employees, such that they are entitled to all the rights and benefits of employment
pursuant to the laws of the United States and Maryland.

92.     Plaintiffs and the Rule 23 Class Members are also protected by the Maryland
Essential Workers' Protection Act (EWPA) as employees of a distribution company. Md. Code
Ann., Lab. & Emply. § 3-1701 *et seq.* Section 3-1707 prohibits essential employers, including
Schmidt, from knowingly misclassifying an essential worker as an independent contractor in order
to avoid paying an essential worker any benefits due during an emergency under the EWPA.[4]

93.     Pursuant to Md. Code Ann., Lab. & Emply. § 3-911(c), upon a finding that Schmidt
knowingly misclassified Distributors as independent contractors, Plaintiffs and the Rule 23 Class
Members are entitled to economic damages, an additional amount up to three times the amount of
any such damages, reasonable counsel fees and costs, and any other appropriate relief.

---

[4] Plaintiffs do not assert a violation of the EWPA as a stand-alone cause of action.

<u>**COUNT II**</u>
**VIOLATION OF MARYLAND WAGE LAWS**
**MD. CODE ANN., LAB. & EMPL. §§ 3-401 et seq. and 3-501 et seq.**
**Wage Deductions**
(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against
defendants Schmidt Baking Distribution, LLC and Schmidt Baking Co., Inc.)

94.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth

in the preceding Paragraphs.

95.     As set forth above, Plaintiffs and the Rule 23 Class Members are employees, not

independent contractors.

96.     It is unlawful under Md. Code Ann., Lab. & Emply. § 3-503 for an employer to

deduct from wages unless the deduction is: (1) ordered by a court of competent jurisdiction;

(2) authorized expressly in writing by the employee; (3) allowed by the Commission because the

employee has received full consideration for the deduction; or (4) otherwise made in accordance

with any law or any rule or regulation issued by a governmental unit.

97.     Defendants, through their policies and practices described above, willfully violated

Maryland Wage Laws throughout the statutory period, and continuing through the present by

making deductions from wages in violation of Md. Code Ann., Lab. & Emply. § 3-503, including

but not limited to, insurance payments and payments towards loans extended by Schmidt to the

distributors so that they could purchase their routes after being reclassified.

98.     Further, "[a]n assignment of wages is void if given as security for the payment or

fulfillment of a usurious contract or the payment of the principal or interest on a usurious loan."

Md. Code Ann., Com. Law § 12-110; *see infra* Count VIII.

99.     As set forth above, the Plaintiffs and other members of the Rule 23 Class have

sustained losses in compensation as a proximate result of defendants' violations of Maryland Law.

Accordingly, the Plaintiffs, on behalf of themselves and the Rule 23 Class members, seek damages

in the amount of their unpaid earned compensation, including for amounts unlawfully deducted, plus liquidated damages, as provided by Md. Code Ann., Lab. & Emply. §§ 3-427 and 3-507.2. *See Marshal v. Safeway Inc.*, 88 A.3d 735, 745-46 (Md. Ct. App. 2014) (holding the remedies of § 3-507.2 apply to unlawful deductions under § 3-503).

100.    Plaintiffs, on behalf of themselves and Rule 23 Class members, seek recovery of their attorneys' fees and costs, as provided by Md. Code Ann., Lab. & Emply. §§ 3-427 and 3-507.2.

**COUNT III**
**VIOLATION OF MD. CODE ANN., LAB. & EMPLY. § 3-502**
**Unpaid Wages**

(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against defendants Schmidt Baking Distribution, LLC and Schmidt Baking Co., Inc.)

101.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

102.    As set forth above, Plaintiffs and the Rule 23 Class Members are employees, not independent contractors.

103.    It is unlawful under Md. Code Ann., Lab. & Emply. § 3-502 for an employer to require or permit an employee to work without paying compensation for all hours worked.

104.    Defendants, through their policies and practices described above, willfully violated Maryland Wage Laws throughout the statutory period, and continuing through the present by failing to pay the Plaintiffs and other members of the Rule 23 Class their earned wages for all hours worked.

105.    The Plaintiffs and other members of the Rule 23 Class have sustained losses in compensation as a proximate result of defendants' violations of Maryland Law. Accordingly, the Plaintiffs, on behalf of themselves and the Rule 23 Class members, seek damages in the amount

of their unpaid earned compensation plus liquidated damages, as provided by Md. Code Ann., Lab. & Emply. §§ 3-427 and 3-507.2.

106.    Plaintiffs, on behalf of themselves and Rule 23 Class members, seek recovery of their attorneys' fees and costs, as provided by Md. Code Ann., Lab. & Emply. §§ 3-427 and 3-507.2.

**COUNT IV**
**VIOLATION OF MARYLAND WAGE LAWS**
**MD. CODE ANN., LAB. & EMPL. § 3-424**

(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against defendants Schmidt Baking Distribution, LLC and Schmidt Baking Co., Inc.)

107.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

108.    As set forth above, Plaintiffs and the Rule 23 Class Members are employees, not independent contractors.

109.    Under Md. Code Ann., Lab. & Empl. § 3-424, an employer must

keep, for at least 3 years, in or about the place of employment, a record of: (1) the name, address, and occupation of each employee; (2) the rate of pay of each employee; (3) the amount that is paid each pay period to each employee; (4) the hours that each employee works each day and workweek; and (5) other information that the Commissioner requires, by regulation, as reasonable to enforce this subtitle.

110.    Here, Schmidt failed to make, keep, and preserve accurate time records with respect to the Plaintiffs and other members of the Rule 23 Class sufficient to determine their wages and hours in violation of Md. Code Ann., Lab. & Emply. § 3-424.

111.    Accordingly, Plaintiffs, on behalf of themselves and the Rule 23 Class members, seek damages suffered as a result of Defendant's violation of Md. Code Ann., Lab. & Emply. § 3-424.

22

**COUNT V**
**(In the Alternative)**
**UNJUST ENRICHMENT**

(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against
defendants Schmidt Baking Distribution, LLC and Schmidt Baking Co., Inc.)

112.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth

in the preceding Paragraphs.

113.    Notwithstanding the terms of any Distribution Agreement, Plaintiffs and Rule 23

Class Members are properly classified as employees under Maryland law.

114.    When a plaintiff confers benefits to a defendant; the defendant knows or appreciates

that benefit; and the defendant's acceptance or retention of the benefit is inequitable, the plaintiff

may claim restitution for the unjust enrichment.

115.    Plaintiffs conferred benefits upon Schmidt when they provided delivery services,

facilitated the sale of product, and distributed product to buyers, which, in turn, brought in revenue

for Schmidt.

116.    Schmidt appreciated or knew of the of the benefit because it knowingly procured

those benefits from the Plaintiffs.

117.    Schmidt accepted and retained the benefits provided by Plaintiffs under such

circumstances as to make it inequitable for the Schmidt to retain the benefit without the payment

of its value. Plaintiffs and Distributors were unlawfully classified as independent contractors and

were not fully or reasonably compensated for the benefits Plaintiffs and Distributors rendered to

Schmidt.

118.    Because Schmidt was unjustly enriched, it must pay restitution for benefits

received.

119.     Due to their misclassification as independent contractors, Plaintiffs and the Rule 23 Class have been deprived of the benefits of employment and have been forced to pay substantial sums of their own money for work-related expenses.

120.     By misclassifying its employees as independent contractors and then requiring those employees to pay Schmidt's own expenses, Schmidt is unjustly enriched and must make restitution of those business expenses to Plaintiffs and Rule 23 Class Members.

<u>**COUNT VI**</u>
**(In the Alternative)**
**QUANTUM MERUIT**
(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against defendants Schmidt Baking Distribution, LLC and Schmidt Baking Co., Inc.)

121.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

122.     Notwithstanding the terms of any Distribution Agreement, Plaintiffs and Rule 23 Class Members are properly classified as employees under Maryland law.

123.     Quantum meruit can be implied in fact or at law when a plaintiff renders services to a defendant. If the plaintiff renders services with a reasonable expectation of payment, that plaintiff may recover the reasonable value of those services from the defendant.

124.     Plaintiffs and Distributors rendered services to Schmidt under circumstances where Plaintiffs and Distributors had a reasonable expectation of payment. Plaintiffs and Distributors are accordingly entitled to the reasonable value of their services from Schmidt. Plaintiffs and the Rule 23 Class are therefore entitled to *quantum meruit* for services rendered.

## COUNT VII
## CONSPIRACY TO VIOLATE MARYLAND WAGE LAWS

(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against
defendants Schmidt Baking Distribution, LLC, Schmidt Baking Co., Inc., Exeter Financial
Services, LLC, and Distribution Consultants, Inc.)

125.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth
in the preceding Paragraphs.

126.    Schmidt, with consultation from DCI, improperly converted Schmidt employees to
independent contractors approximately 12 years ago.

127.    Defendants Schmidt and DCI agreed and conspired among themselves to
misclassify Schmidt employees as independent contractors. Schmidt is listed as a client of DCI on
DCI's website.[5] *See also* Md. Code Ann., Lab. & Emply. § 3-915(b) ("A person may not
knowingly conspire with, aid and abet, assist, advise, or facilitate an employer with the intent of"
knowingly misclassifying employees as independent contractors.).

128.    DCI facilitated the sale of Schmidt routes or territories to Distributors by assisting
in drafting Schmidt's Distribution Agreements and addendums, Advertising Agreements, Security
Agreements granting Schmidt a secured interest in collateral related to Distributors' businesses,
Computer Equipment Lease Agreements, and Disbursement Authorizations entitling Schmidt to
loan proceeds obtained by Distributors to purchase their route(s) or territory.

129.    Schmidt Baking Company's logo appears at the top of the Distribution Agreements,
Advertising Agreements, Computer Equipment Lease Agreements, and Disbursement
Authorizations is listed as party to each Agreement listed in Paragraph 128. DCI's name and

---

[5] *See* DISTRIBUTION CONSULTANTS, INC., http://www.dci-dsa.com/AboutUs.aspx (last visited
Feb. 9, 2022) (listing "Schmidt Baking Company" in the Representative Client List).

address are listed on each and every page of the Agreements and Authorizations listed in Paragraph 128.

130.    Schmidt referred Distributors to Defendant Exeter for financing the sale of distribution routes or territories and failed to disclose the affiliation between Exeter and Schmidt. Schmidt, DCI, and Exeter conspired to arrange for Distributors to authorize Exeter's loan disbursements be made to Schmidt. *See supra* Paragraph 128.

131.    The purpose and intended effect of Defendants Schmidt, Exeter, and DCI's conspiracy and the overt acts in furtherance thereof is to deprive Plaintiffs and the Rule 23 Class Members of all of the rights and benefits of employment, including but not limited to, the right to be free from unlawful deductions from wages, to compensation for all hours worked, to pay, and to rely on accurate time records.

132.    As a result of Defendants Schmidt, Exeter, and DCI's conspiracy, Plaintiffs and the Rule 23 Class Members suffered and will continue to suffer damages due to the deprivation of the rights and benefits owed to them as employees of Schmidt.

## <u>COUNT VIII</u>
### <u>CONSPIRACY TO COMMIT USURY AND USURY</u>
(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against
defendants Schmidt Baking Distribution, LLC, Schmidt Baking Co., Inc.,
Distribution Consultants, Inc., Exeter Financial Services, LLC, and Distribution Services of
America, Inc.)

133.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

134.    As described in more detail above, Schmidt sold (or facilitated the sale of) routes or territories to Distributors.

135.    To bolster the appearance of an "independent business" operating the routes or territories, Schmidt decided to "sell" these territories to Distributors.

136.    Prior to sale, Schmidt required Distributors to acquire financing through third party lenders, including Exeter and DSA. Schmidt, in coordination with DCI, Exeter, and DSA, required Distributors to establish corporate entities to obtain financing for the sale.

137.    Maryland Constitution Article 3, section 57 sets the legal rate of interest at 6% per annum, "unless otherwise provided by the General Assembly. That limit is reiterated in Md. Code Ann., Com. Law § 12-102.

138.    The law, however, allows for higher rates in certain circumstances. If there is a written agreement signed by the borrower that sets forth the interest rate charged by the lender, the maximum rate is eight percent. Md. Code Ann., Com. Law § 12-103(a)(1). Further, Md. Code Ann., Com. Law § 12-103(e)(1) allows a lender to "charge interest at any rate if the loan is: a loan made to a corporation, a commercial loan in excess of $15,000 not secured by residential real property, or a commercial loan in excess of $75,000 secured by residential real property."

139.    Schmidt, Exeter, DCI, and DSA coordinated their efforts, shared information, and planned together to offer financing to Distributors at an interest rate that exceeds the limit allowed by law.

140.    Defendants' requirement that Distributors incorporate allowed Exeter and DSA to evade the eight percent limit proscribed by Md. Code Ann., Com. Law § 12-103(a)(1), and "charge interest at any rate" under Com. Law § 12-103(e)(1).

141.    The financing agreement requires Distributors to be in compliance with Schmidt's distributor agreement.

142.    In granting a security interest in the rights and obligations of Distributors under the distributor agreement, the loans are at least partially secured by power of attorney to Schmidt to defend Distributors against a third party as to any claims arising out of the distributor agreement.

143.    As the loan is secured by power of attorney to a third person, the maximum rates set out in Md. Code Ann., Com. Law § 12-103(c)[6] are not applicable to either loan. *See* Md. Code Ann., Com. Law § 12-103(c)(2)(iv).

144.    Exeter and DSA intentionally and willfully entered into usurious lending contracts in Maryland to facilitate the sale of Schmidt's routes or territories to Distributors. These usurious rates result in substantial injury to Distributors (and/or the corporations that Defendants force them to create for the purposes of obtaining the financing from Exeter and DSA).

145.    The purpose and intended effect of Defendants' conspiracy and the overt acts in furtherance thereof is that Distributors are forced to pay an interest rate in excess of that permitted by Maryland law.

146.    Plaintiffs and the Rule 23 Class Members are therefore, entitled to three times the amount of interest and charges collected in excess of the interest and charges authorized by Maryland Law, or the sum of $500, whichever is greater. Md. Code Ann., Com. Law § 12-114(b)(1).

**COUNT IX**
**CIVIL DAMAGES FOR RACKATEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS**
**28 U.S.C. § 1962(c)**
(Brought by Plaintiffs on behalf of themselves and the Rule 23 Class against
defendants Schmidt Baking Distribution, LLC, Schmidt Baking Co., Inc.,

---

[6] Md. Code. Ann., Com. Law § 12-103(c)(4) also requires lenders making loans under subsection (c) to be licensed pursuant to Md. Code Ann., Fin. Inst. § 11-301 *et seq.* Upon information and belief, neither Exeter nor DSA are so licensed.

Distribution Consultants, Inc., Exeter Financial Services, LLC, and Distribution Services of America, Inc.)

147.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

148.    Named Plaintiffs and each Class Member are "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

149.    Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

150.    At all times relevant to this Complaint, the "enterprise" described herein, which is a non-incorporated association, operated separately and distinct from the Defendants that committed the violations alleged. As previously stated, each of the Defendants is a separately incorporated corporate entity, has its own business location and employees, and has an individual profit motive and personal financial stake in the conspiracy. Defendants, through contractual arrangement and subsequent participation in the fraudulent scheme, formed an association-in-fact with each other, which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(c).

151.    Defendants were each associated with the enterprise and participated in its management and/or operation by directing its affairs and/or by conducting business with each other and by participating and assisting in the fraudulent scheme described herein to deprive Plaintiffs and the Class of the benefits owed to them as employees of Schmidt and charge Plaintiffs and the Class usurious interest rates in violation of Maryland law.

152.    Defendants participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful racketeering activity under 18 U.S.C. §§ 1961(1)(B), 1961(5) and 1962(c), including:

    a.   Multiple acts of mail fraud in violation of 18 U.S.C. § 1341;

    b.   Multiple acts of wire fraud in violation of 18 U.S.C. § 1343;

    c.   Aiding the operation of and operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960; and

    d.   Multiple instances of interstate transport of fraudulently obtained money in violation of 18 U.S.C. § 2314.

153.    Each Class Member suffered injury to his or her property within the meaning of 18 U.S.C. § 1964(c) by reason of the Defendants' violations of 18 U.S.C. § 1962(c).

154.    Plaintiffs and the Class Members are therefore entitled to three times the amount of any and all damages suffered as a result of the illegal acts set forth herein, as well as any other amounts or damages allowed to be recovered under RICO, including reasonable costs and attorneys' fees. 18 U.S.C. § 1964(c).

### **PRAYER FOR RELIEF**

Plaintiffs request the following relief on behalf of themselves and the respective Classes:

    a.   Certification of this action as a Rule 23 class action, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as Class Counsel;

    b.   Declaratory and injunctive relief designating the Plaintiffs and Class Members as employees and enjoining Schmidt from the illegal policies, acts and practices described in this Complaint;

    c.   Judgment against Defendants for violation of Maryland law, including all interest, damages (including any and all forms of special and punitive damages), penalties, restitution, and attorney fees provided by law;

    d.   Award Plaintiffs reasonable attorneys' fees and costs;

e.      Such other and further legal and equitable relief as this Court deems just and necessary.

Dated: February 24, 2022

Respectfully submitted,

*Deyka Spencer* (MB)

Deyka Williams Spencer
The Spencer Firm, LLC.
Bar Number: 979180
2275 Research Blvd., Suite 500
Rockville, MD 20850
Telephone: 301-637-2866
Fax: 866-686-2126
dspencer@spencer-firm.com