IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ERIC GRAY, JR., *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 22-cv-00463-LKG |
| v. | ) | |
| | ) | Dated: February 23, 2023 |
| SCHMIDT BAKING COMPANY, INC., *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Defendants, Schmidt Baking Company, Inc.; Schmidt Baking Distribution, LLC; Exeter Financial Services, LLC (collectively, the "Schmidt Defendants"), have moved to compel arbitration and to stay or dismiss this putative class action matter pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. ECF No. 27; *see also* ECF No. 27-1. The Schmidt Defendants have also moved to dismiss Counts IV, VII, VIII, and IX of the complaint, and all Rule 23 class allegations in the complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 28. These motions are fully briefed. ECF Nos. 27, 28, 30, 32, 39, and 40. No hearing is necessary to resolve the motions. L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court: (1) **GRANTS** the Schmidt Defendants' motion to compel arbitration and to dismiss or stay this matter; (2) **DENIES** the Schmidt Defendants' motion to dismiss **WITHOUT PREJUDICE**; and (3) **STAYS** this matter.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Factual Background**

Plaintiff Eric Gray, Jr. is a resident of Maryland and the president of Eric Gray Jr., Inc. ECF Nos. 1 at ¶ 8; 27-1 at 3; 42 at 4. Mr. Gray entered into a distribution agreement with Schmidt Baking Distribution, LLC for the distribution rights to a sales area located in

Hanover, Maryland, on or about May 22, 2019. ECF No. 27-1 at 3.

Plaintiff Tracey Jackson is also a resident of Maryland and the president of T.M.J. Distribution Inc. ECF Nos. 1 at ¶ 9; 27-1 at 4; 42 at 4. Mr. Jackson entered into a distribution agreement with Schmidt Baking Distribution, LLC for the distribution rights to a sales area located in Clinton, Maryland, on or about July 29, 2019. ECF No. 27-1 at 4.

Schmidt Baking Company, Inc. is a Maryland corporation headquartered in Baltimore, Maryland, that develops, manufactures and markets bread and bread-like products to retailers and foodservice outlets for distribution. ECF No. 1 at ¶ 10. Schmidt Baking Distribution, LLC ("SBD") is a limited liability company organized and existing under the laws of Maryland, with its principal place of business in Baltimore, Maryland. *Id.* at ¶ 11. Exeter Financial Services, LLC is a limited liability company organized and existing under the laws of Maryland, with its principal place of business in Baltimore, Maryland. *Id*. at ¶ 17.

Distribution Consultants, Inc. provides consulting services for food and beverage manufacturers. *Id*. at ¶ 13. Lastly, Distribution Services of America, Inc. provides financing, business formation and accounting services for individuals working as independent distributors, including Plaintiffs Gray and Jackson. *Id.* at ¶¶ 15, 48.

<u>The Distribution Agreement</u>

On or about May 22, 2019, Plaintiff Gray, in his capacity as the president of Eric Gray Jr. Inc., entered into a Distribution Agreement with SBD for the distribution rights to a sales area in Maryland located in the region covered by the Schmidt Baking Company, Inc's Hanover, Maryland depot. *Id*. at ¶ 8; *see also* ECF No. 28-2 Exhibit 1 "Sobotta Decl." at ¶¶ 4, 6; ECF No. 28-2, Exhibit 2-A.

On or about July 29, 2019, Plaintiff Jackson, in his capacity as the president of T.M.J. Distributor Inc., entered into a similar Distribution Agreement with SBD for the distribution rights to a sales area in Maryland located in the region covered by the company's Clinton, Maryland depot. ECF No. 1 at ¶ 9; *see also* Sobotta Decl. at ¶¶ 4, 7; ECF No. 28-2, Exhibit 2-B.

Section 2.3 of the Distribution Agreement addresses the relationship created by the agreement and provides that:

> As an independent contractor, DISTRIBUTOR has the right to operate the business as it chooses, and shall bear all risks and costs of operating such business. DISTRIBUTOR has no authority to retain any person on behalf of [SBD]. It is expressly understood

2

> that neither DISTRIBUTOR nor any of its agents or employees have any claim or right against [SBD] under any circumstances, to any benefits, protection, or other compensation furnished to employees in the traditional employer/employee relationship. . . .

ECF No. 28-2 at 8, 39. Article 11 of the Distribution Agreement addresses dispute resolution. *Id*. at 27, 58.

Relevant to this dispute, Section 11.1 of the Distribution Agreement provides that :

> Any dispute between [SBD] and DISTRIBUTOR arising out of the relationship created by this Agreement shall be subject to the dispute resolution provision set forth below.

*Id*. (§ 11.1). Section 11.2 of the Distribution Agreement addresses mediation and further provides, in relevant part, that:

> In the event of any dispute, either party may initiate a mediation procedure within five (5) days of the date on which facts respecting the dispute first come to such party's attention, by submitting a written request for mediation to the Judicial Arbitration & Mediation Services, Inc. ("JAMS") according to its procedures, or any other mediation service mutually agreed to by the parties according to such mediator's procedures. The mediation process shall begin promptly and shall conclude within ten (10) business days of the day the request for mediation is made, unless the parties mutually otherwise agree. . . .

*Id*. (§ 11.2).

In addition, Section 11.3 of the Distribution Agreement addresses arbitration and provides that:

> If the parties are unable to resolve the dispute through mediation, either party may avail itself of the right to seek relief from an arbitrator, by filing a complaint within ten (10) business days following the conclusion of the mediation process, which period shall constitute an agreed time limitation, and such complaint shall be limited to the cause(s) of action within the scope of the mediation conducted in accordance with Section 11.2 above. Any dispute between the parties subject to this Article shall be decided by a neutral, binding arbitration conducted in accordance with the Judicial Arbitration and Mediation Services, Inc. ("JAMS"). The arbitration shall be conducted by one arbitrator and shall be held in Baltimore, Maryland. . . . Judgment upon the award rendered by the

> arbitrator shall be final and binding and may be entered in any
> court having jurisdiction thereof.

*Id*. at 28-29, 59-60 (§11.3). Lastly, Section 11.7 of the Distribution Agreement contains a so-called "class action waiver" provision, which provides, in relevant part that:

> The parties agree that any proceeding in any forum to resolve any dispute, including mediation, arbitration, litigation, and/or government action involving DISTRIBUTOR, shall be conducted on an individual basis only, and not on a class-wide basis or as a representative action, collective action or a collective governmental action. The parties further agree that only [SBD] (and its affiliates and their respective owners, officers, directors, agents and employees, as applicable) and DISTRIBUTOR (and its affiliates and their respective owners, officers and directors, as applicable) may be the parties to any proceeding described in this Section, and that no such proceeding shall be consolidated, combined, or joined with any other proceeding involving [SBD] and/or any other persons without the written consent of all parties.

*Id.* at 30, 61 (§ 11.7).

### B. Procedural History

Plaintiffs commenced this action on February 24, 2022. ECF No. 1. On April 22, 2022, the Schmidt Defendants filed a motion to compel arbitration and to either dismiss or stay this matter. ECF No. 27. On April 22, 222, the Schmidt Defendants filed a motion to dismiss Counts IV, VII, VIII, and IX of the complaint, and all Rule 23 class allegations in the complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 28.

Plaintiffs filed responses in opposition to the Schmidt Defendants' motions on May 6, 2022. ECF Nos. 30 and 32. The Schmidt Defendants filed replies in support of their motions to compel and to dismiss on May 23, 2022. ECF Nos. 39 and 40. On July 1, 2022, Plaintiffs filed a sur-reply to the Schmidt Defendants' motion to compel by leave of the Court. ECF No. 53.

These motions having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

This Court treats motions to compel arbitration as motions for summary judgment pursuant to Fed. R. Civ. P. 56. *See, e.g.*, *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D.

4

Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute, . . . or where documents outside the pleadings must be considered") (internal citations omitted); *Owen v. CBRE, Inc.*, No. 16-773, 2016 WL 7033973, at *2 (D. Md. Dec. 2, 2016) (citations omitted). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this regard, a fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). But the Court may rely only on facts supported in the record. *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings. *See id.*

      B.      **The Federal Arbitration Act**

The FAA "requires courts to enforce covered arbitration Agreement according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citations omitted). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. And so, the FAA "establishes 'a liberal federal policy favoring arbitration Agreement.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The statute also provides that, when presented with such a petition, a "court shall hear the parties, and upon being

satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But, "[i]f the making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." *Id.*

> In addition, Section 3 of the FAA provides that:
>
>> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* § 3. And so, the Fourth Circuit has recognized that the FAA provides two parallel methods for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration under Section 3, and an affirmative order to engage in arbitration under Section 4. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. V. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d. 95, 106 (D. Md. 2021).

The Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets existing). And so, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist. V. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate"). But "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). And so, the Court

"engage[s] in a limited review to ensure that the dispute is arbitrable—*i.e.,* that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).[1]

In addition, the Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67).  But "if the claimant specifically attacks the validity of the delegation clause itself, a court may consider that clause's enforceability." *Id.* (citing *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017)).  And so, in assessing the enforceability of an arbitration agreement containing a delegation clause, the Court first must decide whether a plaintiff has lodged a challenge against the delegation clause. *Id.* at 338 (citation omitted).  If the Court concludes that a plaintiff "specifically challenged the enforceability of the delegation provision," the Court "then must decide whether the delegation provision is unenforceable 'upon such grounds as exist at law or in equity.'" *Id.* (quoting *Minnieland*, 867 F.3d at 455).

Lastly, the Fourth Circuit has held it mandatory that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)).[2]

---

[1] The Fourth Circuit has also held that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc*., 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin*, 634 F.3d at 266 (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'").

[2] The Fourth Circuit has explained that "application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced

7

The Fourth Circuit has also determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). And so, this Court has elected to dismiss a litigation if all claims are subject to arbitration on several occasions. *See, e.g., Willcock v. My Goodness! Games, Inc.*, No. 16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Phears v. LVNV Funding, LLC*, No. 20-2843, 2020 WL 7054806, at *3 (D. Md. Dec. 2, 2020).

    **C.**    **Applicable Maryland Law**

As a final matter, when determining whether there is a valid arbitration agreement, courts in the Fourth Circuit "apply ordinary state-law principles governing the formation of contracts" and "the federal substantive law of arbitrability[.]" *Muriithi*, 712 F.3d at 179 (citations omitted). The Supreme Court of Maryland (formerly the Court of Appeals of Maryland) has held that, "[t]o be binding and enforceable, contracts ordinarily require consideration." *Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003) (citations omitted); *see also Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992) (binding contracts "must be supported by consideration") (citation omitted). Under Maryland law, "consideration may be established by showing 'a benefit to the promisor or a detriment to the promisee.'" *Cheek*, 835 A.2d at 661 (quoting *Harford Cty. V. Town of Bel Air*, 704 A.2d 421, 430 (Md. 1998)). And so, the forbearance to exercise a right or pursue a claim can constitute sufficient consideration to support a contract under Maryland law. *Id.* (citing *Chernick*, 610 A.2d at 774). The Supreme Court of Maryland has also held that "[a] promise becomes consideration for another promise only when it constitutes a binding obligation." *Id.* Given this, absent a binding obligation, there is not sufficient consideration "to support a legally enforceable agreement." *Id.* And so, an illusory promise is not adequate consideration to support an enforceable contract, because while "[a]n illusory promise appears to be a promise, . . . it does not actually bind or obligate the promisor to anything." *Id.* at 662.

---

by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Galloway*, 819 F.3d at 84 (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)) (internal quotation marks omitted).

In addition, the Supreme Court of Maryland has recognized that an unconscionable contract is "one characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005) (quoting *Unconscionability*, BLACK'S LAW DICTIONARY (8th ed. 2004)).  This is a fact specific investigation wherein to be unconscionable, a contract must be either procedurally and/or substantively unconscionable.  *See, e.g.*, *id.* at 744; *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1274 (Md.App. Ct. 2007).  And so, the Fourth Circuit has explained that "[s]ubstantive unconscionability involves those one-sided terms of a contract from which a party seeks relief . . . , while procedural unconscionability deals with the process of making a contract—bargaining naughtiness." *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir.1989) (internal quotation marks omitted).

### IV.   ANALYSIS

Defendants seek to compel arbitration, and to either stay or dismiss this putative class action matter, because the parties have entered into a valid agreement to arbitrate the claims in this case and any challenges to arbitrability have been delegated to the arbitrator to decide under that agreement.  ECF No. 27-1.

Plaintiffs counter that they may proceed with this putative class action because: (1) the arbitration clause in their Distribution Agreement is invalid and unenforceable; (2) the Distribution Agreement does not unmistakably delegate questions of arbitrability to the arbitrator; (3) the Distribution Agreement fails to specify that arbitrability is determined under JAMS Rules; (4) SBD waived its right to arbitrate; (5) the Distribution Agreement does not identify Schmidt Baking Company, Inc. or Exeter; and (6) the arbitration clause in the Distribution Agreement is limited to disputes with SBD.  ECF No. 30.  And so, they request that the Court deny the Schmidt Defendants' motion to compel.  *Id.* at 2.

A careful review of the Distribution Agreement shows that the arbitration agreement and its delegation clause contained therein are valid and enforceable under Maryland law.  The plain language of the delegation clause also makes clear that Plaintiffs must address threshold issues of arbitrability before the arbitrator.  And so, for the reasons that follow, the Court: (1) GRANTS the Schmidt Defendants' motion to compel arbitration and to dismiss or stay this matter; (2)

9

DENIES the Schmidt Defendants' motion to dismiss WITHOUT PREJUDICE; and (3) STAYS this matter, pending the competition of the parties' arbitration.

### A. The Distribution Agreement Contains A Valid Delegation Clause

There is no dispute in this matter that Plaintiffs Gray and Jackson executed a Distribution Agreement with Schmidt Baking Distribution, LLC. *See* ECF No. 27-1 at12; ECF No. 1 at 6-7; ECF No. 28-2 Exhibits A, B. The Schmidt Defendants argue that there is a valid and enforceable agreement between the parties to arbitrate the claims in this matter in the Distribution Agreement and that any challenges to arbitrability have been delegated to the arbitrator to decide under the terms of that agreement. ECF No. 27 at 18.

Plaintiffs disagree. ECF No. 30 at 23-24. And so, the Court first considers whether the Distribution Agreement has a valid and enforceable delegation clause. *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 338 (4th Cir. 2020) (if the Court concludes that a plaintiff specifically challenges the enforceability of the delegation clause, the Court must decide whether the delegation provision is unenforceable upon such grounds as exist at law or in equity).

#### 1. The Delegation Clause Is Clear And Unmistakable

The Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs*, 967 F.3d. at 337 (quoting *Rent-A-Center*, 561 U.S. at 68-69). And so, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration. *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67).

In this case, Section 11.3 of the Distribution Agreement addresses arbitration and provides, in relevant part, that:

> *Any dispute between the parties subject to this Article shall be decided by a neutral, binding arbitration conducted in accordance with the Judicial Arbitration and Mediation Services, Inc. ("JAMS").*

ECF No. 28-2 at 28, 59 (emphasis supplied). The Court reads this language to "clearly and unmistakably" delegate the threshold issue of arbitrability to the arbitrator for several reasons.

10

First, the delegation language is quite broad and covers "[a]ny dispute between the parties subject to this Article." Other language found in the Distribution Agreement also clarifies the types of disputes that are subject to Article 11.

Section 11.1 of the Distribution Agreement provides that:

> Any dispute between [SBD] and DISTRIBUTOR arising out of the relationship created by this Agreement shall be subject to the dispute resolution provision set forth below.

ECF No. 27-1 at 27, 58 (§ 11.1). The recitals to the Distribution Agreement also describe the nature of the relationship created by the Distribution Agreement and state that "the parties desire to enter into a written agreement describing and setting forth the terms and conditions under which they will do business with each other . . . [and that] the parties intend to create an independent contractor relationship. . ." *Id*. at 5-6, 36-37 (Recitals) and 8-10, 39-41 (§ 2.3). And so, the Court reads Section 11.3 in tandem with these contractual provisions to make clear that the delegation clause in Section 11.3 governs any dispute between the parties that arise out of the independent contractor relationship created between SBD and Plaintiffs under the Distribution Agreement. *See Walton v. Mariner Health of Maryland, Inc*., 391 Md. 643, 660, 894 A.2d 584, 594 (2006) ("'[G]enerally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement.'").

The Court also reads Section 11.3 to incorporate the rules and procedures for conducting arbitrations in accordance with the Judicial Arbitration and Mediation Services, Inc. ("JAMS"). The Fourth Circuit has held that when two sophisticated parties expressly incorporate into a contract JAMS Rules that delegate questions of arbitrability to an arbitrator, then that incorporation constitutes the parties' clear and unmistakable intent to let an arbitrator determine the scope of arbitrability. *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 529 (4th Cir. 2017). Courts have also held that the incorporation of arbitral rules substantively identical to those found in JAMS Rule 11(b), or in the AAA Rules, constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability. *Id*. at 527; *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that incorporation of the arbitrator rules constituted clear and unmistakable evidence that the parties intended to delegate the arbitrability question to the arbitrator); *Fallo v. High-Tech Inst*., 559 F.3d 874, 878 (8th Cir. 2009) (same); *Qualcomm Inc. v. Nokia Corp*., 466 F.3d 1366, 1373 (Fed. Cir. 2006) (same); *Terminix Int'l Co.*

11

*v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) (same); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (same).

Here, Section 11.3 of the Distribution Agreement provides that any dispute between the parties arising out of the independent contractor relationship created between SBD and Plaintiffs *"shall be decided by a neutral, binding arbitration conducted in accordance with the Judicial Arbitration and Mediation Services, Inc. ("JAMS")*[.]" ECF No. 28-2 at 27, 59 (emphasis supplied). The JAMS Rules that govern arbitration provide, in relevant part, that:

> The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Comprehensive Rules *or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.*

JAMS COMPREHENSIVE ARBITRATION RULES & PROCEDURES, Rule 1(a) (Effective June 1, 2021) ("J.A."). These Rules also provide that:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*Id*. at Rule 11(b). And so, the JAMS Rules require that disputes over the formation, existence, validity, interpretation, or scope of the agreement under which arbitration is sought, and who are proper parties to the arbitration, be submitted to, and ruled on, by the arbitrator. *Id.* .

Because the Court reads Section 11.3 of the Distribution Agreement to incorporate the JAMS Rules, the Court reads this provision to delegate threshold issues regarding the arbitrability of any dispute arising out of the independent contractor relationship created between SBD and Plaintiffs to the arbitrator.

The Court is also not persuaded by Plaintiffs' argument that the absence of word "rules" in Section 11.3 clouds the parties' intent to delegate arbitrability issues. Plaintiffs correctly observe that Section 11.3 does not include the word "rules." ECF No. 30 at 24-25. But the Court does not agree with Plaintiffs that the absence of this word renders this delegation clause ambiguous. Rather, the JAMS Rules make clear that these rules apply whenever the parties have

provided "for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of [JAMS Rule 1]." J.A. Rule 1(b).

Plaintiffs' proposed reading of Section 11.3 to mean that the arbitration would be conducted by JAMS, but not actually subject to JAMS Rules, is also unreasonable. The relevant language in Section 11.3 provides that the parties' dispute "shall be decided by a neutral, binding arbitration conducted in *accordance* with [JAMS]." ECF No. 28-2 at 27, 59. (emphasis supplied). The ordinary meaning of the word "accordance" is to follow a rule. *See Accordance* MERRIAM-WEBSTER DICTIONARY ("in a way that agrees with or follows (something, such as a rule or request"); *see also Accordance* CAMBRIDGE DICTIONARY https://dictionary.cambridge.org/us/dictionary/english/accordance (last visited Feb. 14, 2023). And so, Section 11.3 makes clear that the JAMSs rules and procedures apply to the parties' disputes under the Distribution Agreement.

### 2. Plaintiffs Have Not Shown They Are Unsophisticated

Plaintiffs' argument that there can be no clear and unmistakable delegation of the issue of arbitrability here, because they are not sophisticated parties, is also not persuasive. Plaintiffs argue that, because they are independent contractors, they must be treated as unsophisticated individuals, who cannot reasonably be charged with a "clear and unmistakable understanding" that arbitrability was delegated to an arbitrator. ECF No. 30 at 25. To support this view, Plaintiffs rely upon *Aviles v. Quik Pick Express, LLC,* No. 15-5214, 2015 WL 9810998 at *6 (C.D. Cal. Dec. 3, 2015), *vacated on other grounds*, 703 F. App'x 631 (9th Cir. 2017), to argue that Federal courts have found independent contractors who operate delivery businesses to be unsophisticated parties that are untrained in the law. ECF No. 30 at 25. But the Court does not read *Aviles* or the additional cases cited by Plaintiffs to create a bright line rule that an independent contractor can never be a sophisticated party to an arbitration agreement. *See Id*. (showing the Court conducting a fact-specific examination relevant to sophistication). More importantly, Plaintiffs put forward no facts in this case to show that they are unsophisticated and did not understand JAMS Rules. *See generally*, ECF No. 30.

The Court also observes that Plaintiffs are the Presidents of their respective businesses and they execute business Agreement as part of their duties. ECF No. 28-2, Exhibit 2-A and 2-B;

ECF No. 39 at 20.  Plaintiffs also do not dispute that they were afforded at least 14 days to review the Distribution Agreement at issue here, and that they were advised in writing to seek the advice of an attorney or accountant and indicated that they did so, before signing the Distribution Agreement.  ECF No. 39 at 7-8; *see also* ECF No. 39-1 at 9 (Def. Ex. 1-A (Gray FDD)); ECF No. 39-1 at 206 (Def Ex. 1-B (Jackson FDD));ECF No. 39-1 at 417 (Def Ex. 1-C (Gray receipt of FDD)); ECF No. 39-1 at 419 (Def. Ex. 1-D (Jackson receipt of FDD)).  Given this, the factual record before the Court does not show that Plaintiffs are unsophisticated parties.

      **B.**      **The Delegation Clause Is Valid And Enforceable**

Having found the delegation clause in the Distribution Agreement to be clear and unmistakable, the Court next considers whether this delegation clause is enforceable.  *Gibbs*, 967 F.3d. at 337.  A careful review of the arbitration agreement and its delegation clause makes clear that the parties have entered into a valid and enforceable agreement.

To be binding and enforceable under Maryland law, the arbitration agreement and its delegation clause require mutual consideration.  *Cheek*, 835 A.2d at 661; *see also Chernick* 610 A.2d at 774 (binding contracts "must be supported by consideration").  In this regard, the Supreme Court of Maryland has held that a promise becomes consideration for another promise only when it constitutes a binding obligation.  *Cheek*, 835 A.2d at 661.  And so, to be legally enforceable, the arbitration agreement and delegation clause at issue here must not be supported by an illusory promise that lacks a binding obligation.  *Id*. at 662.

Here, the arbitration agreement and its delegation clause are supported by various promises by both parties regarding their rights and obligations related to the resolution of disputes.  For example, under Sections 11.2 and 11.3 of the Distribution Agreement, either party may avail itself of the dispute resolution process.  ECF No. 28-2 at 27-29, 58-60.  Section 11.5 of the Distribution Agreement also provides that neither party shall be liable to the other for certain types of damages.  *Id.* at 29, 60.

In addition, the parties mutually agree in Section 11.7 that any disputes in any forum "shall be conducted on an individual basis only, and not on a class-wide basis or as a representative action, collective action, or a collective governmental action." *Id.* at 30, 61. And so, these mutual promises evince a valid and enforceable agreement to arbitrate.  *Cheek*, 835 A.2d at 665 ("[M]utual promises to arbitrate act as an 'independently enforceable contract' [i.e.],

14

each party has promised to arbitrate disputes arising from an underlying contract, and 'each promise provides consideration for the other.'") (quoting *Holmes v. Coverall North America, Inc.*, 649 A.2d 365, 370 (Md. 1994)).

Plaintiffs' argument that the arbitration agreement and its delegation clause fail on the basis of unconscionability is also not persuasive. The Supreme Court of Maryland has recognized that an unconscionable contract is "one characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005) (quoting *Unconscionability*, BLACK'S LAW DICTIONARY (8th ed. 2004)). And so, the Fourth Circuit has explained that "[s]ubstantive unconscionability involves those one-sided terms of a contract from which a party seeks relief . . . , while procedural unconscionability deals with the process of making a contract—bargaining naughtiness." *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir.1989) (internal quotation marks omitted).

Plaintiffs argue that the dispute resolution clauses in the Distribution Agreement are "not highlighted or emphasized in any way, and fail to alert Plaintiffs or other unsophisticated operators to the important rights they are giving up." ECF No. 30 at 18. But a careful review of the Distribution Agreement makes clear that the dispute resolution and arbitration provision are clearly identified in Article 11. As discussed above, Plaintiffs do not dispute that they were afforded at least 14 days to review the Distribution Agreement, and were advised in writing to seek the advice of an attorney or accountant and indicated that they did so, before executing the Distribution Agreement. Given this, Plaintiffs have not shown that the arbitration agreement is procedurally unconscionable.

To the extent that Plaintiffs argue that the arbitration agreement and its delegation clause are substantively unconscionable, this argument is equally unavailing. Plaintiffs raise the following five concerns to show that these provisions are substantively unconscionable: (1) the Distribution Agreement is unclear about what claims are covered by the arbitration clause; (2) the Distribution Agreement is unclear about whether dispute resolution is mandatory or discretionary; (3) the dispute resolution terms quash their ability to vindicate their statutory rights; (4) the dispute resolution terms strictly and severely limit the time in which claims may be brought; and (5) the cost-shifting provision applicable to arbitration is inconspicuous and lacks

sufficient information to apprise distributors of the true cost of their promise to arbitration any claim they have against Schmidt Baking Distribution, LLC.  ECF No. 30 at 19-23.  None of Plaintiffs' arguments are convincing.

First, as discussed above, the Court reads Section 11.3 of the Distribution Agreement to clearly govern any dispute between the parties that arise out of the independent contractor relationship created between SDB and Plaintiffs.  Section 11.1 of the Distribution Agreement also clearly states that any dispute covered by Article 11 "shall be the subject of the dispute resolution process set forth [in that Article]."  And so, the Court does not find any ambiguity in these dispute resolution provisions, as Plaintiffs suggests.

Plaintiffs' remaining concerns pertain to how the dispute resolution provisions in the Distribution Agreement may limit or alter their claims in this case.  But, to the extent that Plaintiffs' concerns have merit, these issues do not demonstrate the type of extreme unfairness, that is made evident by contractual terms that would unreasonably favor the Schmidt Defendants.  *See Walther*, 872 A.2d at 743 (quoting *Unconscionability*, BLACK'S LAW DICTIONARY (8th ed. 2004)); *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir.1989).  And so, the Court does not find the arbitration agreement to be unconscionable.[3]

### C.  A Stay Of This Litigation Is Appropriate

Because the Court concludes that the arbitration agreement and delegation clause in the Distribution Agreement are valid and enforceable under Maryland law, the Court considers as a final matter whether to stay or dismiss this matter.  *Gibbs*, 967 F.3d at 337 (quoting *Rent-A-Center*, 561 U.S. at 67) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration).  The Fourth Circuit has held that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'"  *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)).  By comparison, the Fourth Circuit has determined that "dismissal is a proper remedy when all of the

---

[3] Because the Court concludes that the Distribution Agreement contains a valid and enforceable delegation clause, the Court does not reach the remaining issues raised by the parties in connection with the Schmidt Defendants' motion to compel.

issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).

Because the threshold issue of whether the claims asserted in this putative class action are subject to arbitration must be resolved by the arbitrator, it is not yet clear whether all claims in this case will be subject to arbitration. Given this, a stay of these proceedings, pending the resolution of this issue by the arbitrator is appropriate in this case. And so, the Court STAYS further proceedings in this matter pending the completion of the parties' arbitration.

Because the Court concludes that the threshold issue of whether all claims in this putative class action are subject to arbitration must be resolved, before determining whether any of Plaintiffs' claims may proceed in this forum, the Court also DENIES the Schmidt Defendants' motion to dismiss these claims WITHOUT PREJUDICE.

## V.  CONCLUSION

In sum, a careful review of the Distribution Agreement shows that the arbitration agreement and the delegation clause contained therein are valid and enforceable under Maryland law. The plain language of the delegation clause also makes clear that Plaintiffs must address the threshold issue of arbitrability before the arbitrator. And so, for the foregoing reasons, the Court:

1.  **GRANTS** the Schmidt Defendants' motion to compel arbitration and to dismiss or stay this matter;

2.  **DENIES** the Schmidt Defendants' motion to dismiss **WITHOUT PREJUDICE;** and

3.  S**TAYS** further proceedings in this matter pending the completion of the parties' arbitration.

**IT IS SO ORDERED**.

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge